## Diehl v. Fidelity-Philadelphia Trust Co. et al.

*G. Butterworth* and *R. M. Bernstein,* for plaintiff.

*R. R. Koch* and *M. A. Foley,* for Fidelity-Philadelphia Trust Co.

*P. H. Strubing* and *B. O. Frick,* for Metropolitan Life Insurance Co.

SMITH, P. J., June 26, 1948.—This matter comes before the court on a petition for a reargument after the court had dismissed the motion of the Fidelity-Philadelphia Trust Company to mark an entire judgment to its use.

Plaintiff, Edna L. Diehl, had brought an action in trespass against both defendants to recover damages for injuries sustained by her when she had slipped on

some smooth ice on the north pavement of Walnut Street, west of·Broad Street, Philadelphia, at or near the dividing line of the premises known as the Manufacturers' Club Building, located at the northwest corner of Broad and Walnut Streets, Philadelphia, and the Stock Exchange Building immediately adjacent and to the west of the Manufacturers' Club Building. The jury rendered a verdict for plaintiff against both defendants. The Fidelity-Philadelphia Trust Company is the owner of the Manufacturers' Club building, and the Metropolitan Life Insurance Company is the owner of the Stock Exchange Building.

In the trial before the Court of Common Pleas No. 2, the jury made a special finding in answer to the following question:

"Was the sheet of ice on the north sidewalk of Walnut Street, west of Broad Street, upon which plaintiff testified she fell, formed from steam coming from the Stock Exchange Building, owned by defendant, Metropolitan Life Insurance Company?"

The answer of the jury was: "Yes." The court below entered a judgment n. o. v. in favor of the Metropolitan Life Insurance Company (the owner of the Stock Exchange Building). On appeal to the Superior Court (159 Pa. Superior Ct. 513) by defendant, Fidelity-Philadelphia Trust Company, this order was reversed.

It appears that the accident occurred December 15, 1943, about 9:50 a.m. It was a clear, cold day but there was no ice on any other pavement. Steam came from the Stock Exchange Building and because of a cold wind, it condensed and fell on the pavement of the Manufacturers' Club Building, forming a coat of ice of the area of 2½ by 6 feet. Prior to the accident, notice had been given to Fidelity-Philadelphia Trust Company of the icy condition of its sidewalk. The Superior Court, in Diehl v. Fidelity-Philadelphia Trust Company et al., 159 Pa. Superior Ct. 513, made it clear that where steam was permitted to come from

the Stock Exchange Building and because of the cold day, it condensed on the pavement of the Manufacturers' Club, that the negligence of the Fidelity-Philadelphia Trust Company is not a superseding cause of harm to plaintiff and that both defendants are concurrently negligent. On pages 516 and 517 of said opinion, it is said:

"The failure of Fidelity-Philadelphia after notice to remove the ice and maintain its sidewalk in a condition of reasonable safety for pedestrians was an act of negligence and a contributing cause of plaintiff's accident. . . .

"We think that Metropolitan's negligence was sufficiently established, and that under the evidence the escaping steam was not a mere circumstance but the primary cause of the accident. . . .

"We are of the opinion that the applicable and the controlling principle to the question before us in this appeal is found in Restatement, Torts, §452: 'Failure of a third person to perform a duty owing to another to protect him from harm threatened by the actor's negligent conduct is not a superseding cause of the other's harm.' Fidelity-Philadelphia's failure to remove the ice from its pavement after notice was a clear breach of the duty which it owed to the public to maintain its pavement free from hazards of that character, and in a condition of reasonable safety. But Fidelity-Philadelphia's failure to perform its duty was not a superseding cause of harm to plaintiff resulting from Metropolitan's negligence. Metropolitan was bound to anticipate the natural consequence of the condition it created and also the nonaction of Fidelity-Philadelphia. Metropolitan's negligence was not insulated by Fidelity-Philadelphia's intervening negligence. See Mautino et al. v. Piercedale Supply Co., 338 Pa. 435, 440, 13 A. 2d 51; Cusatis v. Lehigh R. Co., 152 Pa. Superior Ct. 193, 198, 31 A. 2d 572; Restatement, Torts, §§440, 447. It was not an independent act of

negligence by Fidelity-Philadelphia that produced the accident. Under the facts of this case both defendants were concurrently negligent, and it follows that they were jointly and severally liable. See Holstein et al. v. Kroger Grocery & Baking Co., et al., 348 Pa. 183, 186, 34 A. 2d 491; Bisson v. John B. Kelly, Inc., 314 Pa. 99, 105, 170 A. 139; Restatement, Torts, §452, comment a.

"Judgment n. o. v. in favor of the Metropolitan Life Insurance Company of New York is reversed; and judgment is directed to be entered on the verdict in favor of plaintiff and against the Metropolitan Life Insurance Company of New York; judgment in favor of plaintiff and against Fidelity-Philadelphia Trust Company is affirmed."

Defendant, Fidelity-Philadelphia Trust Company, having paid the judgment, filed a petition for a rule to show cause why the entire judgment should not be marked to its use against the Metropolitan Life Insurance Company of New York. After argument, this court on February 18, 1947, dismissed the petition. No appeal was taken within the term of three calendar months as provided by statute, and we are bound by that provision, but even if the motion for a reargument were properly before us, we see no reason for modifying or changing our order. The contention of the Fidelity-Philadelphia Trust Company that the entire judgment should be marked to its use against the Metropolitan Life Insurance Company has no merit. This contention is based upon the proposition that it is an indemnity. The Superior Court stated, supra: "Both defendants were concurrently negligent and it follows that they are jointly and severally liable." The doctrine of indemnity cannot apply where the Fidelity-Philadelphia Trust Company had actual knowledge of the ice on its sidewalk and did nothing about it prior to the accident. In the case of Georges

at ux. v. Reading Co. e al., 162 Pa. Superior C. 475, 478, Dithrich, J., said:

"The general rule, that there is no right to indemnity as between joint tortfeasors, is subject to many exceptions or limitations, 42 C. J. S. Indemnity §27 (a) and (b) ; 27 Am. Jur. Indemnity §18. 'Where a person has become liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land or chattels, which was created by the misconduct of the other or which, as between the two, it was the other's duty to make safe, he is entitled to restitution from the other for expenditures properly made in the discharge of such liability, unless after discovery of the danger, he acquiesced in the continuation of the condition': Restatement, Restitution, Title C. Indemnity and Contribution Between Tortfeasors, §95. In the notes to this section, page 152, it is noted that the rule applies to a situation '. . . where a person is under a duty to maintain premises in safe condition and another person by a negligent act causes them to be unsafe, with the result that a third person is damaged thereby'. In such a situation '. . . if the first person has settled a valid claim in favor of the injured person, he is entitled to indemnity from the other in spite of his own negligence, unless after knowledge of the risk, he recklessly imperils the injured person, or unless he consents to the continued existence of the dangerous condition thereby making it his own'."

Thus, while the icy condition on the sidewalk was due to the negligence of the Metropolitan Life Insurance Company, the evidence is clear that the Fidelity-Philadelphia Trust Company had actual knowledge of the dangerous condition which it permitted to exist on its sidewalk and thus it is not entitled to an entire judgment against the Metropolitan Life Insurance Company.

*Order*

And now, to wit, June 26, 1948, the order of this court as of February 18, 1947, is affirmed.